**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TINA BRICKLES | : | Case No. _____ |
| 121 Poplar Street | : | |
| Phillipsburg, OH 45354 | : | Judge _____ |
| | : | |
| and | : | |
| | : | |
| ROGER BRICKLES | : | |
| 121 Poplar Street | : | |
| Phillipsburg, OH 45354, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| VILLAGE OF PHILLIPSBURG, OHIO | : | **JURY DEMAND ENDORSED** |
| P.O. Box 172 | : | **HEREON** |
| 10868 Brookville Phillipsburg Road | : | |
| Phillipsburg, OH 45354, | : | |
| | : | |
| and | : | |
| | : | |
| MARK WYSONG, | : | |
| In his individual and official capacities, | : | |
| P.O. Box 172 | : | |
| 10868 Brookville Phillipsburg Road | : | |
| Phillipsburg, OH 45354, | : | |
| | : | |
| and | : | |
| | : | |
| JUSTIN W. SANDERSON, | : | |
| In his individual and official capacities, | : | |
| 5236 Sabra Drive | : | |
| Huber Heights, OH 45424, | : | |
| | | |
| Defendants. | | |

_____

Now come Plaintiffs Tina Brickles and Roger Brickles, by and through counsel, and for their Complaint against Defendants to redress violations of Plaintiff Tina Brickles's constitutional rights pursuant to 42 U.S.C. § 1983, for state law claims, and for reasonable attorney's fees under 42 U.S.C. § 1988, states as follows:

## JURISDICTIONAL STATEMENT

1.      Subject matter jurisdiction of this court is premised upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1343(a)(3) (civil rights) to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States.

2.      Venue is proper in the Southern District of Ohio, Western Division at Dayton, where the violations took place pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

3.      Plaintiffs Tina Brickles ("Brickles") and Roger Brickles (collectively, "Plaintiffs") are married individuals residing at 121 W. Poplar Street, Phillipsburg, Montgomery County, Ohio.

4.      Upon information and belief, Defendant Justin W. Sanderson ("Sanderson") is an individual residing at 5236 Sabra Drive, Huber Heights, Ohio. Sanderson was employed, at all times relevant to this Complaint, as a police officer with the Village of Phillipsburg, Ohio, in Montgomery County, Ohio, acting under color of state law, statute, ordinance, regulation, custom or usage when interacting with Tina Brickles.

2

5.      Upon information and belief, Defendant Mark Wysong ("Wysong") is an individual residing at 30 N. State Street, Phillipsburg, Ohio 45354. Wysong was employed, at all times relevant to this Complaint, as a police officer and police chief with the Village of Phillipsburg, Ohio, in Montgomery County, Ohio, acting under color of state law, statute, ordinance, regulation, custom or usage.

6.      Defendant Village of Phillipsburg, Ohio is a body corporate and politic established to exercise the rights and privileges conveyed to it by the constitution and laws of the State of Ohio.  The Village of Phillipsburg is located in Montgomery County, Ohio, and has a population between 500 and 600 persons.

## FACTS RELEVANT TO ALL CLAIMS

7.      Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

8.      Upon information and belief Justin W. Sanderson and Mark Wysong worked with each other at multiple jobs, including but not limited to the Grandview Medical Center Police Department and G4S Secure Solutions USA prior to their employment at the Village of Phillipsburg Police Department.

9.      Sanderson was employed as a control room operator at the Montgomery County Juvenile Detention Center in Dayton, Ohio, between 2008 and 2013.  Upon information and belief, Sanderson was disciplined on multiple occasions, suspended, and given poor performance reviews during this time.  Sanderson was disciplined and suspended for, among other things, accessing pornographic web sites from a government computer while on duty, allowing a male to enter the female housing unit in violation of facility policies, and leaving his

3

post on multiple occasions for extended periods of time.  Upon information and belief, Defendant Wysong was aware of those disciplinary actions, suspensions, and performance reviews at the time that he later hired Sanderson as a Phillipsburg police officer.

10.     Sanderson enrolled in the Dayton Police Academy as a City of Dayton Police Department recruit in March 2014, but he was fired for misconduct.  That misconduct included Sanderson asking a female recruit and another male recruit if they were "making love" during a training exercise.  He was counselled for his behavior and instructed not to repeat it.

11.     Despite being fired as a Dayton Police recruit, Sanderson completed the Ohio Peace Officer Basic Training Program on or about September 3, 2014.

12.     After completion of the peace officer training program, Sanderson was hired in October 2014 as a police officer for the Grandview Medical Center Police Department in Dayton, Ohio.

13.     Approximately two months after he started his career as a peace officer, Sanderson was suspended from Grandview Medical Center on December 8, 2014, for the purpose of conducting a lengthy investigation into Sanderson's violation of the hospital's conduct and discipline policy and its sexual harassment policy.

14.     During his first two months of employment, Sanderson took a photograph of his erect penis next to a can of hairspray and was exhibiting this photograph to the female nursing staff around the hospital.  Several female staff members complained about Sanderson's conduct, and investigation into these allegations concluded that they were substantiated.

4

15.     In addition, while he was employed by Grandview Medical Center Police Department, Sanderson made contact with a known prostitute on several separate occasions. During some of those occasions, Sanderson talked about having the prostitute perform oral sex on him for twenty dollars.  On one of those occasions, the prostitute got into Sanderson's vehicle, and he displayed a black handgun and his Grandview Police badge to her.

16.     Sanderson expressed to his supervisors at the Grandview Medical Center Police Department his interest in undercover prostitution work, and he admitted to them that, on several occasions, he had spoken to prostitutes before work, sat in front of drug houses, and spoken to people after they purchased drugs. The Grandview Medical Center Police Department did not participate in undercover drug or prostitution operations, and Sanderson's actions were not done as part of any such operations.

17.     On December 24, 2014, Sanderson resigned his position as an officer with the Grandview Medical Center Police Department while the investigation into his misconduct was still pending.  Upon information and belief, Sanderson's resignation was tendered in lieu of an involuntary termination for misconduct.

18.     In approximately June 2015, Sanderson applied for employment with G4S Secure Solutions USA ("G4S"), and he was ultimately hired by G4S to work as a security officer at the location of G4S's client, the Dayton Metro Library in Dayton, Ohio.

19.     G4S completed a background check on Sanderson before hiring him. Upon information and belief, that background check revealed Sanderson's prior misconduct including, but not limited to, his misconduct while employed at the Montgomery County Juvenile Detention Center and the Grandview Medical Center Police Department.

5

20.     At the time of Sanderson's application to G4S, Defendant Wysong was employed by G4S. Upon information and belief, Wysong was responsible for hiring Sanderson as an employee of G4S, and he became aware of the contents of G4S's background check on Sanderson, including his prior misconduct, before making the decision to hire Sanderson at G4S.

21.     Upon information and belief, Wysong supervised Justin W. Sanderson while he was employed at G4S from approximately June 2015 to June 2016 when Sanderson submitted his resignation from G4S to Wysong.

22.     Upon information and belief, Sanderson was hired as a paid police officer by the Village of Phillipsburg around June 2016.

23.     At the time of Sanderson's hire with the Village of Phillipsburg, Defendant Wysong was the Chief of the Phillipsburg Police Department and was, upon information and belief, the only full-time, paid peace officer in the Phillipsburg Police Department.

24.     Upon information and belief, Wysong was the final decisionmaker with respect to hiring decisions at the Phillipsburg Police Department, and he was directly responsible for the decision to hire Sanderson as an officer with the Phillipsburg Police Department.

25.     Upon information and belief, Wysong decided to hire Sanderson as a police officer with the Phillipsburg Police Department despite his knowledge of the following:

a.     That Sanderson had been disciplined and suspended on multiple occasions while employed at the Montgomery County Juvenile Detention Center for, among other things, viewing pornographic web sites on one of his employer's computers while on duty,

6

allowing a male to enter a unit housing juvenile female residents, and leaving his post on multiple occasions and leaving the detention center for extended periods of time;

        b.     That, within two months of beginning his employment at Grandview Medical Center Police Department, Sanderson had taken a photograph of his erect penis next to a can of hairspray and exhibited that photograph to nursing staff around the hospital;

        c.     That Grandview Medical Center had suspended Sanderson for an investigation of his violations of the hospital's conduct and discipline policy and its sexual harassment policy;

        d.     That Sanderson had had several unauthorized contacts with a known prostitute while employed as a Grandview Medical Center police officer, during which the exchange of money for sex acts was discussed, and at least one contact during which Sanderson displayed his duty weapon and Grandview Police badge to the prostitute;

        e.     That Sanderson had resigned his position at Grandview Medical Center Police Department less than three months after starting there and while the investigation into his sexual misconduct was still pending;

        f.     That Sanderson's only prior employment as a peace officer was his two-month stint at Grandview Medical Center;

        g.     That Sanderson had had little or no prior on-the-job training as a peace officer;

h.      That, due to the size and budget of the Phillipsburg Police
Department, Sanderson would frequently be the only peace officer on duty during his shift and
that he would therefore be working, during those times, without any supervision;

i.      That Sanderson's shift would frequently be during the time of day
after the Phillipsburg municipal building were closed, locked, and unstaffed for the day;

j.      That the Village of Phillipsburg and Wysong would be providing
Sanderson a key to the Phillipsburg municipal building, which would give him unsupervised and
unfettered access to the Phillipsburg municipal building;

k.      That the Village of Phillipsburg had no police cruisers equipped
with cameras, no body cameras, and that there were no cameras placed in the Phillipsburg
municipal building, such that any misconduct by a police officer was likely to go undetected;

l.      That Sanderson lacked the knowledge, experience, and judgment
to perform the duties of a peace officer, especially without direct supervision.

26.     On May 20, 2017, at about 12:30 a.m., approximately two weeks prior to
the events giving rise to this Complaint, Sanderson was on duty as a Phillipsburg police officer.
Sanderson was the only Phillipsburg police officer on duty at the time, and the Phillipsburg
municipal building was closed and unstaffed, except insofar as Sanderson chose to use it.

27.     On May 20, 2017, at about 12:30 a.m., Sanderson conducted a traffic stop
on a vehicle travelling northbound on State Route 49 in the direction of Greenville, Ohio, just
north of the municipal limits of the Village of Phillipsburg.  The young woman driving the
vehicle was suspected of drinking and driving.  Rather than conduct field sobriety tests at the

8

scene, Sanderson handcuffed the young woman, placed her in the back of his Phillipsburg Police cruiser, and transported her to the Phillipsburg municipal building. The municipal building was dark, and Sanderson had to use his key to enter and then turn on the lights.

28.     After taking her to the Phillipsburg municipal building, Sanderson performed a field sobriety test on the still-handcuffed young woman. Sanderson advised her that she had failed the field sobriety test and asked her what they "could do about this." Sanderson told her that he did not "get the chance" to search her at the car, and he asked if he could search her now. The young woman, afraid because nobody was around and it was very dark, said "yes."

29.     Sanderson then pulled up the young woman's dress from behind, pulled down her shorts and underwear, and proceeded to rape her. Without her consent and under the threat and coercion of arrest, Sanderson performed oral sex on the young woman and engaged in vaginal sexual intercourse with her.

30.     When he had finished with the young woman, he smirked and said, "I will not tell if you don't tell," or words to that effect. Sanderson then had the young woman get dressed, and he walked her back to his cruiser. Sanderson then drove her back to her car and released her without charging her with any criminal offense. He then instructed her to follow him in her car, and he led her out of his jurisdiction and to her home, where he sat outside her residence until she went inside.

31.     Due to the absence of any police supervisor, or any other Village of Phillipsburg employees at all, and due to the lack of any cruiser camera, body camera, or surveillance camera at the Phillipsburg municipal building, Sanderson was able to commit this rape on May 20, 2017, without leaving a paper trail or video evidence of the crime. He did,

9

however, leave physical evidence in the form of his DNA and that of his victim on a desk and on the floor of the police department inside the Phillipsburg municipal building.

33.    If Sanderson had been supervised by a police supervisor, or if there had been other employees present in the Phillipsburg municipal building, or if there had been surveillance cameras in the municipal building on the night of May 19-20, 2017, Defendants Wysong and the Village of Phillipsburg would have known, and should have known, of Sanderson's rape of that young woman that night and could have taken action to prevent a repetition of Sanderson's abuse of the police authority granted to him by Defendants Wysong and Phillipsburg.  Instead, Sanderson was permitted and empowered to continue his predatory activity less than two weeks later.

33.    On or about June 2, 2017, at approximately 11:00 p.m., Tina Brickles was driving home from a friend's house on State Route 49 and passed by a police car at Baker Lane in the Village of Phillipsburg, Ohio.

34.    On or about June 2, 2017, at approximately 11:10 p.m., after being home for approximately 10 minutes, Officer Justin W. Sanderson came to the door of Tina Brickles's home at 121 Poplar Street in the Village of Phillipsburg, Ohio.

35.    At the time that Sanderson appeared at the door of the home of Tina Brickles, he was on duty, wearing the uniform of the Village of Phillipsburg Police Department, and equipped with a police radio, handcuffs, and his duty firearm.

36.    Prior to this incident, Tina Brickles had never met Justin W. Sanderson in person, but she had seen him around town, because Phillipsburg is a small village.

10

37.     Upon opening the door to her home, Sanderson asked Brickles for her name and for the location of her husband.

38.     Sanderson then requested that Brickles put her dog away and asked if she knew her husband had a warrant for his arrest.  Sanderson then asked Brickles to go into the kitchen where the light was better.

39.     Sanderson informed Brickles that he had a warrant for her arrest, but he did not show her a warrant or any other paperwork.

40.     While still at her residence and without showing her a warrant, Sanderson asked Brickles to turn away from him and he patted her down. Brickles was wearing shorts and a t-shirt. Sanderson pulled at the belt loop of Brickles's shorts, pulling her shorts away from her body. Under the guise of patting her down, then proceeded to feel her breasts under her bra and pull her bra out away from her body.

41.     Sanderson next asked Brickles if she had been drinking or doing drugs. He then instructed her to put her hands behind her back, and he handcuffed her hands behind her back.

42.     Sanderson placed Brickles, without her consent, into his police car and took her to the Phillipsburg municipal building located at 10868 Brookville Phillipsburg Road, Phillipsburg, OH 45354. Phillipsburg does not have a separate police station and it does not have a jail.

11

43.     Sanderson never specifically advised Brickles that she was under arrest, the basis for the warrant for her arrest, or the reason for the transport to the Phillipsburg municipal building.

44.     The Phillipsburg municipal building houses the Phillipsburg Police Department.  At the time that Sanderson and Brickles arrived at the Phillipsburg municipal building, the building was locked, dark, and unoccupied.

45.     Once they were inside the Phillipsburg municipal building, Sanderson took the handcuffs off Brickles.

46.     Sanderson then felt inside the pockets of the shorts that Brickles was wearing and pulled some change out of her pockets.  He continued to pull at her shorts and asked her if she was wearing underwear.

47.     Sanderson told Brickles she had a warrant in Eaton.  In response, she told him to have Eaton come pick her up, because she was not comfortable with the situation or with how Sanderson was acting.

48.     Sanderson then proceeded to stand in front of Brickles for a long period of time.  He then asked her if there was some way they could clear this incident up, or if she needed to go to jail.  Brickles took this statement as a request by Sanderson for some type of sexual activity in exchange for her not going to jail.  She told him she was not that kind of person, which she intended and Sanderson understood as a rejection of his request.

49.     Sanderson then told Brickles that he had been to jail, and he asked if she wanted to know what he had been to jail for.  Brickles did not respond.

12

50.     Sanderson then left Brickles and went into an office, and she heard what sounded like paper shredding.

51.     Sanderson came back out from the office and again sat across from Brickles and asked her what they could do about this. Brickles was afraid to go anywhere with Sanderson, so she again told him to have Eaton come get her.

52.     Sanderson was then standing about one foot in front of Brickles and asked her how old she thought he was.

53.     Sanderson then instructed Brickles to stand up again and turn around. Sanderson put Brickles back into handcuffs, and Brickles started to cry.  Sanderson stood very close behind Brickles after he handcuffed her.

54.     From behind Brickles, Sanderson put his hand on her neck and back and then cupped her breast.  Brickles tried to move away.

55.     While Brickles was still handcuffed, Sanderson put his hand down the front of her shorts and underwear and penetrated her vagina with his fingers.

56.     She again stated that she was not that type of person, but there was little that she could do to resist while handcuffed and alone with Sanderson in the Phillipsburg municipal building.

57.     Sanderson then left the room and went back into the office.

58.     Brickles sat back down and started crying and praying.

13

59.     Sanderson came back out and pulled up a chair in front on Brickles and sat and stared at her for fifteen minutes.

60.     Brickles believed that Sanderson was going to hurt her or rape her, so she started to tell him things about her in the hope that he would leave her alone.

61.     Sanderson said if he took her home, her neighbors would know she has a warrant, and people saw her come out of the house in handcuffs.

62.     Sanderson told Brickles that she needed to tell people that the warrant was not confirmed and that he could get in trouble for letting her go.

63.     Sanderson told Brickles that he was working again the following weekend, and if she did not take care of the warrant, he would come back to her house again.

64.     Sanderson then took Brickles out of the Phillipsburg municipal building and put her in the back of the police car.

65.     Sanderson drove Brickles back to her house and parked in her driveway. He asked her if he could walk her to her door.

66.     Brickles went inside and locked all the doors and windows and immediately called her husband to tell him what had just happened to her.

67.     Sanderson came back to her house the following Friday night, June 7, 2017, between 11:30 p.m. and midnight.  Brickles's daughter answered the door and got Brickles. Brickles told Sanderson to leave her house and never come back.

14

68.     Brickles was afraid to report what happened to her, because Sanderson was a police officer. Eventually her husband contacted a friend at the Clayton Police Department who contacted the Federal Bureau of Investigation (FBI), and eventually an FBI agent contacted Brickles.

69.     At all times relevant to this Complaint, Justin W. Sanderson purported to be acting under color of state law and as a law enforcement officer for the Village of Phillipsburg Police Department. Sanderson was wearing a Village of Phillipsburg Police Department uniform, was driving a Village of Phillipsburg police cruiser, was equipped with a police radio and firearm, and stated that he had a warrant for the arrest of Brickles.

## FEDERAL CLAIMS

### FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Deprivation of Right to Be Free from Excessive Use of Force)

70.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

71.     Plaintiff Tina Brickles had a constitutional right to be free from the excessive use of force in the context of an arrest and pretrial detention under the Fourth and Fourteenth Amendments to the Constitution of the United States.

72.     On or about June 2, 2017, Defendant Justin W. Sanderson, while acting under color of state law, deprived Plaintiff Tina Brickles of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to those secured by the Fourth and Fourteenth Amendments to the Constitution, by, among other things, subjecting Brickles to the unlawful and excessive use of force.

15

73.     Defendant Justin W. Sanderson was acting under color of state law by wearing the uniform of a Phillipsburg Police Department officer, traveling in a marked Phillipsburg Police Department cruiser, asserting he had a warrant for the arrest of Brickles, transporting Brickles to the Phillipsburg municipal building, and holding himself out as Ohio peace officer and, specifically, a Phillipsburg Police Department officer, during the course of and in the scope of his duties as an employee of the Phillipsburg Police Department.

74.     On or about June 2, 2017, Defendant Justin W. Sanderson used excessive and unlawful force that was objectively unreasonable by sexually assaulting Tina Brickles while her hands were handcuffed behind her back.

75.     In carrying out the foregoing wrongful acts, Sanderson's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against this Defendant.

76.     The use of excessive force against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant, all in violation of 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Deprivation of Substantive Due Process Right to Bodily Integrity)

77.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

78.     At all times relevant to this Complaint, Plaintiff Tina Brickles had a clearly established right under the substantive component of the Due Process Clause of the United States Constitution to personal security and bodily integrity.  That right to bodily integrity encompassed the right not to be sexually assaulted under color of law.

79.     On June 2, 2017, Defendant Justin W. Sanderson, while acting under color of state law, deprived Brickles of her constitutional right to bodily integrity by sexually assaulting her while she was handcuffed and purportedly under arrest in the Phillipsburg municipal building.

80.     The sexual assault against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant, all in violation of 42 U.S.C. § 1983.

81.     In carrying out the foregoing wrongful acts, Sanderson's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against this Defendant.

**THIRD CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Deprivation of Right to Be Free from Unreasonable Seizure)**

82.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

83.     On June 2, 2017, Sanderson went to the Plaintiffs' house sometime after 11:00 p.m. stating he had a warrant for the arrest of Plaintiff Tina Brickles.

84.     At no time did Sanderson ever show Brickles a warrant for her arrest.

85.     Sanderson arrested Brickles, handcuffed her, and placed her in his police cruiser.  He transported her to the Phillipsburg Government building thereby restraining and detaining Brickles.

86.     Upon information and belief, Sanderson had no legal authority to enter upon the property of Brickles, place her in handcuffs, and take her to the Phillipsburg municipal building.

87.     By doing so, Sanderson placed Brickles in detention, under arrest, and restrained her freedom, without legal authority to do so.

88.     Brickles never consented to the detention or restraint of her freedom by Sanderson.

89.     Plaintiff Tina Brickles had a constitutional right to be free from the unreasonable seizure of her person under the Fourth Amendment to the Constitution of the United States.

90.     Defendant Justin W. Sanderson, while acting under color of state law, deprived Brickles of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to those secured by the Fourth Amendment to the

Constitution, by, among other things, subjecting Brickles to the unreasonable seizure of her person.

91.     Defendant Justin W. Sanderson was acting under color of state law by wearing the uniform of a Phillipsburg Police Department officer, traveling in a marked Phillipsburg Police Department cruiser, asserting he had a warrant for the arrest of Brickles, transporting Brickles to the Phillipsburg municipal building, and holding himself out as a Phillipsburg Police Department officer, during the course of and in the scope of his duties as an employee of the Phillipsburg Police Department.

92.     In carrying out the foregoing wrongful acts, Sanderson's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against this Defendant.

93.     The false arrest of Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

## FOURTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Deprivation of Right to Be Secure from Unreasonable Search)

94.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

95.     At all times relevant to this Complaint, Plaintiff Tina Brickles had a constitutional right under the Fourth Amendment to be secure from unreasonable searches.

96.     On June 2, 2017, Sanderson went to the Plaintiffs' house sometime after 11:00 p.m. stating he had a warrant for the arrest of Tina Brickles.

97.     Sanderson had no proof of such warrant for Brickles's arrest, and he ultimately did not take her to jail or to a judicial officer.

98.     Sanderson's unlawful arrest of Brickles did not support the unlawful search of Brickles's person.

99.     Sanderson had no legal authority to arrest Brickles, and therefore Sanderson had no legal authority to search Brickles's person.

100.    Despite having no legal authority to arrest, detain, or search Brickles, Sanderson conducted a search of the pockets of the shorts Brickles was wearing, in addition to putting his hand down the inside of Brickles's shorts and underwear in violation of her constitutional right under the Fourth Amendment to be protected from unreasonable searches.

101.    Defendant Sanderson, while acting under color of state law, deprived Brickles of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to those secured by the Fourth Amendment to the Constitution, by, among other things, subjecting Brickles to the unreasonable search of her person.

102.    In carrying out the foregoing wrongful acts, Sanderson's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against this Defendant.

20

103.     The unlawful search of Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

### FIFTH CLAIM FOR RELIEF
**(42 U.S.C. § 1983 Deprivation of Right to Equal Protection of the Laws)**

104.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

105.     Plaintiff Tina Brickles is a woman and is therefore a member of a protected class.

106.     Sexual harassment and sexual assault are forms of gender discrimination proscribed by the Equal Protection Clause of the Fourteenth Amendment.  Therefore, Brickles had a constitutional right to be free from sexual harassment and sexual assault from state actors while in state custody.

107.     On June 2, 2017, Defendant Sanderson intentionally violated the constitutional right of Plaintiff Tina Brickles to be free from gender discrimination by subjecting her to sexual harassment and sexual assault while acting under color of state law, as described above.

108.     The gender discrimination against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the

21

police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant, all in violation of 42 U.S.C. § 1983.

109.    In carrying out the foregoing wrongful acts, Sanderson's conduct was motivated by evil motive or intent, and it involved reckless or callous indifference to the federally protected rights of others, thus justifying the award of punitive damages against this Defendant.

### SIXTH CLAIM FOR RELIEF
**(42 U.S.C. § 1983 Municipal Liability for Inadequate Screening)**

110.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

111.    Upon information and belief, Wysong, as the Chief of Police for Phillipsburg Police Department, was the final policymaker regarding the hiring of employees and, specifically, the hiring of Sanderson as a Phillipsburg police officer.

112.    Wysong was the person who actually hired Sanderson as an officer with the Phillipsburg Police Department.

113.    Upon information and belief, Wysong had actual knowledge of Sanderson's prior misconduct at the Montgomery County Juvenile Detention Center, the Dayton Police Academy, the Grandview Medical Center Police Department, and at G4S.  Alternatively, Wysong performed a grossly inadequate screening of Sanderson's background, under circumstances in which an adequate screening would have revealed the nature and extent of Sanderson's prior misconduct.

114.    At the time that Sanderson was hired as Phillipsburg police officer, based on the nature and the extent of Sanderson's known prior misconduct, the comparative lack of knowledge, experience, and judgment that Sanderson had exhibited as a peace officer, and the unsupervised nature of the conditions under which Sanderson would be working, Defendant Wysong knew or should have known that this police officer (Sanderson) was highly likely to inflict the particular injury suffered by Plaintiff Tina Brickles (i.e., a sexual assault while in the custody or control of Sanderson).

115.    Despite that knowledge or constructive knowledge, Wysong was deliberately indifferent to the risk that a violation of the constitutional rights of the Plaintiff or of other female detainees or arrestees would follow the decision to hire Sanderson.

116.    As a direct and proximate result of Defendant Wysong's deliberate indifference to the constitutional rights of Plaintiff Tina Brickles, Plaintiff suffered damages associated with the sexual assault on her by Defendant Sanderson.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant, all in violation of 42 U.S.C. § 1983.

## SEVENTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Municipal Liability for Failure to Supervise)

117.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

118.    The Village of Phillipsburg is also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers and for overlooking and covering up officer

23

misconduct. In addition, the Village had a general policy, pattern and/or practice of not disciplining police officers for their misconduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The Village's failure to supervise and train its police officers, and the Village's willful blindness towards the constitutional violations of its employees, constitute a deliberate and conscious indifference to the rights of citizens, including the right to be free from unreasonable search and seizure, the excessive use of force, and the right to bodily integrity.

119. Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the Village's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy.

120. In the present case, the Village's formal and informal actions in overlooking, hiding, and/or tacitly encouraging police misconduct through the police chief and the Village Council reflect a policy, practice, custom, and procedure authorizing and allowing the use of excessive and unlawful use of force that violated the civil rights of Plaintiff Tina Brickles. Consequently, the Village is liable for harm caused to Plaintiffs as a result of its policies, practices customs and procedures.

121. Defendant Village of Phillipsburg is liable for the constitutional torts of Sanderson because the Village sanctioned the following customs, practices, and policies:

a. Maintaining a Village police department, as opposed to contracting with the Montgomery County Sheriff's Office for police protection, despite the obvious lack of

24

proper supervision, training, and discipline of the Police Department that was necessary to safeguard the constitutional rights of the people of Phillipsburg;

   b. Ignoring the serious need for training and supervision of its officers in regard to the use of force and the treatment of detainees and arrestees;

   c. Failing to discipline those persons found to have engaged in the use of excessive or unlawful force upon those entrusted to their care and/or under their control;

   d. Failing to adequately supervise and/or observe its officers;

   e. Failing to discharge officers who have shown a pattern or practice of using excessive or unlawful force; and

   f. Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

  122. At the time that Defendant Sanderson sexually assaulted Plaintiff Tina Brickles, Defendant Sanderson was acting pursuant to an official Village policy, practice, custom and procedure of overlooking and/or authorizing police officer's use of unlawful or excessive force against detainees and arrestees.  Thus, the City's policy was a direct cause of Plaintiff's injuries.  In particular, the Village's policy caused Plaintiff to be deprived of her constitutional rights to be free from unlawful seizures and searches and the excessive use of force and the right to bodily integrity.

123.    As a direct and proximate result of the Defendants' actions, Plaintiff Tina Brickles suffered mental anguish and suffering that required counseling and caused a fear of men and the police and other severe and lasting physical and emotional injuries.

## EIGHTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Municipal Liability for Violation of Equal Protection Clause)

124.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

125.    Brickles is a woman and is therefore a member of a protected class.

126.    The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike.  Therefore, Brickles, as a female detainee of the Phillipsburg Police Department, had a right to be treated similarly to male detainees of the Phillipsburg Police Department.

127.    Defendants Wysong and the Village of Phillipsburg discriminated against Plaintiff Tina Brickles on the basis of her gender by failing to provide a reasonably safe and secure location where female detainees could be processed.

128.    Upon information and belief, in June 2017 the only location provided for Phillipsburg police officers to process female detainees was the Phillipsburg municipal building, which was unstaffed and unmonitored after normal business hours.  Upon information and belief, due to the size of the village, there was frequently only one police officer on duty in the Village of Phillipsburg after normal business hours.

26

129. Accordingly, Phillipsburg police officers, all of whom were male, had an opportunity to be alone with female police detainees inside the Phillipsburg municipal building outside normal business hours. By failing to staff the Phillipsburg municipal building with another employee during hours when only a single police officer was on duty or to otherwise supervise the lone officer on duty, Defendants Wysong and the Village of Phillipsburg created a ready-made environment in which a female detainee could be sexually assaulted by a Village police officer inside the Phillipsburg municipal building without fear of detection or interruption. Because most, if not all, Phillipsburg police officers were male, because women are disproportionately the victims of sexual assault by police officers, and because women, especially handcuffed women, are more vulnerable than men to sexual assault due to their relative size and strength, the policy of Defendants Wysong and the Village of Phillipsburg disproportionately impacted female detainees of the Phillipsburg Police Department by making them especially vulnerable to sexual assault and more likely to become victims of sexual assault.

130. As a result of the policy of Defendants Wysong and the Village of Phillipsburg, Plaintiff's right to the equal protection of the law was violated, because her constitutional rights to bodily integrity and to be free from the excessive use of force were compromised in a way that the rights of male detainees were not violated. While male detainees of the Phillipsburg Police Department were reasonably safe from sexual assault, Plaintiff, as a female detainee, was placed in a special danger.

131. Defendants Wysong and the Village of Phillipsburg knew or clearly should have known that their actions specifically endangered females detained or arrested by Phillipsburg police officers.

27

132.     The policy of Defendants Wysong and the Village of Phillipsburg regarding the use of the unstaffed and unmonitored Phillipsburg municipal building was a direct causal link in the deprivation of Plaintiff's constitutional rights.  But for the policy regarding the use of the Phillipsburg municipal building, Brickles would not have been sexually assaulted by a Phillipsburg police officer.

133.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered mental anguish and suffering that required counseling and caused a fear of men and the police and other severe and lasting physical and emotional injuries.

**STATE CLAIMS**

**NINTH CLAIM FOR RELIEF**
**(Civil Assault)**

134.     Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

135.     Sanderson threatened to touch or attempted to touch Plaintiff Tina Brickles in an offensive manner by handcuffing her, standing behind her, and making comments to her about trying to work out a deal so she did not have to go to jail.

136.     Brickles did not consent to any touching by Sanderson.

137.     On June 2, 2017, when Brickles was handcuffed in the Phillipsburg municipal building with her back turned to Sanderson, Brickles was placed in fear or apprehension that Sanderson would harm her and/or touch her in an offensive manner.

28

138. At the time that Brickles was handcuffed and when Sanderson made his comments to her, Sanderson had the apparent ability to harm her.

139. The assault against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff. Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

## TENTH CLAIM FOR RELIEF
### (Civil Battery)

140. Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

141. On June 2, 2017, Sanderson intentionally and unlawfully made physical contact with Brickles when he arrested her, handcuffed her, touched her body, put his hand down her shorts, and used his fingers to penetrate her vagina.

142. Brickles did not consent to the contact.

143. The contact made by Sanderson was both harmful and offensive to Brickles.

144. The battery against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff. Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

29

### ELEVENTH CLAIM FOR RELIEF
#### (False Imprisonment)

145.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

146.    On June 2, 2017, Sanderson intentionally and without privilege to do so confined Brickles to a limited area in both his police car and in the Phillipsburg municipal building.

147.    Brickles did not consent to the confinement by Sanderson.

148.    Brickles was not free to leave and could not leave either the police car or the Phillipsburg municipal building because she was handcuffed.

149.    Alternatively, if at any time Sanderson was lawfully confining Brickles, this lawful confinement ended when Sanderson did not arrest her and when she was unlawfully and offensively touched by Sanderson.

150.    The false imprisonment of Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

### TWELFTH CLAIM FOR RELIEF
#### (False Arrest)

151.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

30

152.    Sanderson went to Brickles house sometime after 11:00 p.m. stating he had a warrant for Brickles arrest.

153.    At no time did Sanderson ever show Brickles a warrant for her arrest.

154.    Sanderson handcuffed Brickles thereby arresting her and restraining her, then placed her in his police car and transporting her to the Phillipsburg Government building thereby restraining and detaining Brickles.

155.    Sanderson had no legal authority to enter upon the property of Brickles, place her in handcuffs, and take her to the Phillipsburg municipal building.

156.    By doing so, Sanderson placed Brickles in detention, under arrest, and restrained her freedom, with no legal authority to do so.

157.    Brickles never consented to the detention or restraint of her freedom by Sanderson.

158.    The false arrest against Plaintiff Tina Brickles by Defendant Sanderson was the direct and proximate cause of injuries suffered by Plaintiff.  Specifically, Plaintiff suffered mental anguish and suffering necessitating counseling, fear of men and the police, and other severe and lasting physical and emotional injuries as a result of the actions of the Defendant.

### THIRTEENTH CLAIM FOR RELIEF
**(Intentional Infliction of Emotional Distress)**

159.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

31

160. On or about June 2, 2017, Sanderson intentionally and/or recklessly acted in an extreme and outrageous manner by intentionally inserting his finger into Brickles vagina while she was under arrest and handcuffed in a government building.

161. Sanderson's conduct towards Brickles proximately caused Brickles to suffer emotional injuries.

162. Brickles mental anguish was serious and of a nature that no reasonable person could be expected to endure it.

163. As a direct and proximate result of Sanderson's conduct, as set forth in this claim, Brickles has suffered temporary and permanent emotional and psychological injuries and damages, the exact amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF
### (R.C. 4112.02(G) Discriminatory Practices in Public Accommodations)

164. Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

165. The Village of Phillipsburg is the proprietor, employer, keeper, or manager of the Phillipsburg municipal building located at 10868 Brookville Phillipsburg Road, Phillipsburg, OH 45354.

166. The Phillipsburg municipal building is a place of public accommodation.

167. Brickles was denied the full enjoyment, advantages, facilities, or privileges of the Phillipsburg municipal building because of her gender.  By failing to staff the Phillipsburg municipal building with another employee during hours when only a single police officer was on duty or to otherwise supervise the lone officer on duty, Defendants Wysong and

the Village of Phillipsburg created a ready-made environment in which a female detainee could

be sexually assaulted by a Village police officer inside the Phillipsburg municipal building

without fear of detection or interruption.  Because most, if not all, Phillipsburg police officers

were male, because women are disproportionately the victims of sexual assault by police

officers, and because women, especially handcuffed women, are more vulnerable than men to

sexual assault due to their relative size and strength, the policy of Defendants Wysong and the

Village of Phillipsburg disproportionately impacted female detainees of the Phillipsburg Police

Department by making them especially vulnerable to sexual assault and more likely to become

victims of sexual assault

168. Because of Brickles was made to suffer an increased risk of being sexually

assaulted while in the Phillipsburg municipal building, Brickles was denied the full enjoyment,

advantages, facilities, or privileges of that place of public accommodation.

### FIFTEENTH CLAIM FOR RELIEF
### (Loss of Consortium)

169. Plaintiffs restate and incorporate by reference all those allegations

contained in the preceding paragraphs as if fully rewritten herein.

170. At the time of the events complained of in this Complaint, Plaintiffs were

married to one another and continue to be married to one another.

171. As a direct and proximate result of the Defendants' conduct, as set forth in

this Complaint, resulting in injuries to Plaintiff Tina Brickles, Plaintiff Roger Brickles, as the

husband of Tina Brickles, has suffered the loss of services, society, companionship, comfort,

love, and solace of his wife Tina, in an amount to be proven at trial.

## CLAIM FOR PUNITIVE DAMAGES

172.    Plaintiffs restate and incorporate by reference all those allegations contained in the preceding paragraphs as if fully rewritten herein.

173.    The conduct of Defendants Sanderson, Wysong, and the Village of Phillipsburg as pleaded herein was undertaken with malicious intent, intentionally, willfully, wantonly, recklessly, and with a substantial disregard for the safety for Plaintiff and for her constitutional rights, which conduct was substantially certain to result in harm to Plaintiff.

174.    Plaintiff is thus entitled to an award of punitive damages for Defendants' wrongful conduct as pleaded herein.

## CLAIM FOR ATTORNEY'S FEES

175.    Plaintiff are entitled to recover attorney's fees and costs pursuant to 49 U.S.C. § 1988.  Plaintiffs therefore request that the Court and jury award their attorney's fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    Compensatory damages against all Defendants, jointly and severally, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00);

B.    Punitive damages against Defendants Sanderson and Wysong in an amount greater than Seventy-Five Thousand Dollars ($75,000.00);

C.    Reasonable attorney's fees and the costs of this action, including prejudgment interest and post-judgment interest; and

34

D.      Such other and further relief that this Court may deem just and proper and

to which Plaintiff may be entitled at law or equity.

Respectfully submitted,


/s Bradley D. Anderson
Bradley D. Anderson (0061325)
Kevin M. Darnell (0095952)
RION, RION & RION, L.P.A., INC.
130 W. Second St., Suite 2150
Dayton, OH 45402
Phone:  (937) 223-9133
Fax:  (937) 223-7540
banderson@rionlaw.com
kdarnell@rionlaw.com

Attorneys for Plaintiffs Tina Brickles and
Roger Brickles


## JURY DEMAND

Plaintiffs demand a jury trial on all issues triable to a jury.


/s Bradley D. Anderson
Bradley D. Anderson (0061325)

35