**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TINA BRICKLES, et al., | : | Case No. 3:18-CV-00193 |
| | : | |
| Plaintiffs, | : | Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| v. | : | |
| | : | **PLAINTIFFS' MEMORANDUM** |
| JUSTIN SANDERSON, et al., | : | **IN OPPOSITION TO MOTION** |
| | : | **TO DISMISS OF DEFENDANTS** |
| Defendants. | : | **VILLAGE OF PHILLIPSBURG,** |
| | : | **OHIO AND MARK WYSONG** |
| | : | |

_____

Now come Plaintiffs Tina Brickles, Roger Brickles, and Kelsey Walker
("Plaintiffs"), by and through counsel, and submit the following Memorandum in Opposition to
the Motion to Dismiss of Defendants Village of Phillipsburg, Ohio and Mark Wysong (Doc. 19),
which was filed on January 10, 2019.  Because Plaintiffs have sufficiently pled each of their
claims, Defendant Mark Wysong ("Wysong") is not entitled to qualified immunity, and the
Village of Phillipsburg, Ohio (the "Village") and Wysong are not entitled to statutory immunity,
the Defendants' Motion to Dismiss must be denied.

I.     STATEMENT OF FACTS

    A.     Sanderson's Prior Employment

        Defendant Justin Sanderson ("Sanderson") was employed as a control room
operator at the Montgomery County Juvenile Detention Center in Dayton, Ohio, for about five
years.  Am. Complaint, ¶ 10.  While employed at the Juvenile Detention Center, Sanderson was
disciplined on multiple occasions, suspended, and given poor performance reviews.  *Id.*
Sanderson's misconduct included accessing pornographic web sites from a government computer
while on duty, allowing a male to enter the female housing unit in violation of facility policies,

and leaving his post on multiple occasions for extended periods of time.  *Id.*  Sanderson enrolled in the Dayton Police Academy as a City of Dayton Police Department recruit in March 2014, but he was fired for misconduct.  *Id.*, ¶ 11.  That misconduct included Sanderson asking a female recruit and another male recruit if they were "making love" during a training exercise.  *Id.*

After completion of peace officer training, Sanderson was hired in October 2014 as a police officer for the Grandview Medical Center Police Department in Dayton, Ohio.  *Id.*, ¶ 13.  Within two months after starting, Sanderson was suspended from Grandview Medical Center on December 8, 2014, due to his violation of the hospital's disciplinary and sexual harassment policies.  *Id.*, ¶ 14.  These violations included taking a photograph of his erect penis and exhibiting this photograph to the female nursing staff, making contact with known prostitutes and discussing paying them for oral sex, and inviting the prostitutes into his vehicle.  *Id.*, ¶ 15-16.  On December 24, 2014, Sanderson resigned his position as an officer with the Grandview Medical Center Police Department while the investigation into his misconduct was still pending. *Id.*, ¶ 18.

Around June 2015, Sanderson applied for and was hired at G4S Secure Solutions USA ("G4S"), as a security officer.  *Id.*, ¶ 19.  Wysong was working for and responsible for hiring Sanderson at G4S. *Id.*, ¶ 21. Sanderson worked there until June 2016 when Wysong hired him to work as a full-time paid police officer at the Village of Phillipsburg.  *Id.*, ¶ 22-24.  Wysong knew of Sanderson's past work history because of their mutual employment and the background check from G4S.  *Id.*, ¶ 26.

B.    <u>Incident with Walker</u>

On May 19, 2017, Kelsey Walker ("Walker") went to the Oregon district in Dayton with some friends.  *Id.*, ¶ 27.  Walker planned on meeting another friend in Greenville

and started driving home around midnight. *Id.*, ¶ 28. As she was driving through Phillipsburg, she was pulled over by Sanderson for going left of center. *Id.* Sanderson claimed Walker was operating a vehicle while intoxicated, handcuffed her, placed her in his cruiser and took her to the Phillipsburg municipal building. *Id.*, ¶ 30.

When they arrived at the municipal building it was locked and no one was inside. *Id.*, ¶ 31. Sanderson unlocked the building, turned on the lights and took Walker inside. *Id.* Once inside, Sanderson sat on the desk and asked Walker what he should do about this. *Id.* Walker interpreted this as a request by Sanderson for sex. *Id.* While handcuffed Sanderson performed field sobriety tests on Walker and told her she failed the tests. *Id.*, ¶ 32. Sanderson then searched Walker and started fondling Walker's breasts and groping her. *Id.*, ¶ 33. Sanderson then pulled up Walker's dress, pulled down her shorts and underwear, and began to kiss her buttocks. *Id.* Sanderson then proceeded to rape Walker while she was still in handcuffs. *Id.*, ¶ 34. When Sanderson was finished raping her, he told her he would not tell if she did not. *Id.*, ¶ 35.

Sanderson allowed Walker to drive home, followed her all the way to her house, and pulled to the end of her driveway and asked her for her phone number. *Id.* While driving home Walker called her mother and a friend to tell them she was sexually assaulted by a police officer. *Id.*

C.    Incident with Brickles

On June 2, 2017, at approximately 11:00 p.m., Tina Brickles ("Brickles") drove home from a friend's house. *Id.*, ¶ 39. After being home for about 10 minutes, Sanderson came to the door of Brickles's home and asked where her husband was and entered her house to have better light. *Id.*, ¶ 39 -44. Sanderson claimed there was a warrant for her arrest, but never

showed her any warrant, and started to pat her down.  *Id.*, ¶ 56-46.  While patting her down, Sanderson started to feel her breasts under her bra. *Id.*, ¶ 46.

Sanderson then handcuffed Brickles behind her back, placed her in his police car and took her to the Phillipsburg municipal building, which again was empty and dark.  *Id.*, ¶ 47-50.  Sanderson again started groping Brickles and told her she had a warrant in Eaton, Ohio, to which she told him to have Eaton pick her up.  *Id.*, ¶ 52-53.  Like with Walker, Sanderson asked Brickles if there was any way to clear this up or if she needed to go to jail.  *Id.*, ¶ 54.  Brickles understood this to mean Sanderson was requesting sexual activity in exchange for not going to jail, and she rejected his request.  *Id.*  Sanderson stood behind Brickles and started groping her again, then slid his hand down her pants and penetrated her vagina with his fingers.  *Id.*, ¶ 60-61.

Sanderson took Brickles home and told her that he would come back to her house next weekend when he was working if she did not take care of the warrant.  *Id.*, ¶ 69-70.  Sanderson did come back to her house the following Friday around midnight and she told him to leave.  *Id.*, ¶ 73.

## II.  LAW AND ARGUMENT

### A.  Standard of Review

A Rule 12(b)(6) motion tests whether, as a matter of law, the plaintiff is entitled to relief, if the allegations as pled by the plaintiff are taken as true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)).  "However, to survive a motion to dismiss, a party is not required to prove his claim. Rather, the question is whether the claim is sufficiently pled."  *Leonhardt v. Strollo*, N.D. Ohio No. 1:15-CV-02507, 2016 WL 126448 (denying motion to dismiss § 1983 claims).

The Sixth Circuit recently summarized the standard of review for motions to dismiss as follows:

> To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff shows that he is entitled to relief by "plausibly suggesting" that he can meet the elements of his claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). And a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions, "formulaic recitation[s]" of the claim's elements, and "naked assertion[s]" of liability are all insufficient. *Id.* (second alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

> When evaluating a complaint's sufficiency, courts use a three-step process. First, the court must accept all of the plaintiff's factual allegations as true. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). Second, the court must draw all reasonable inferences in the plaintiff's favor. *Id.* And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.

*Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018).

B.     <u>Plaintiffs Have Sufficiently Pled Facts to State Plausible § 1983 Claims Against the Village and Wysong.</u>

The Village and Wysong argue that Plaintiffs' Amended Complaint fails to state § 1983 claims for inadequate screening, failure to train, supervise, or discipline, and a violation of the Equal Protection Clause against the Village and Wysong. As a general matter, a plaintiff can bring a claim under § 1983 when she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The Village and Wysong cannot be held liable on a theory of *respondeat superior. Harvey v. Campbell Cty., Tenn.*, 453 Fed. Appx. 557, 562 (6th Cir. 2011) (citing *Phillips v. Roane County, Tenn.,* 534 F.3d 531, 543 (6th Cir.2008); *Miller v.*

5

*Calhoun County,* 408 F.3d 803, 817, n. 3 (6th Cir.2005)).  To determine if a municipality or its supervising officials are responsible for a violation of a plaintiff's rights, the courts apply a two-prong test:  "(1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the [municipality or its officials] [are] responsible for that violation." *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505–06 (6th Cir.1996) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992)).

In this case, Plaintiffs have pled sufficient facts to make plausible claims against the Village and Wysong to allege that (1) Defendant Justin Sanderson violated Plaintiffs' constitutional rights to personal security and bodily integrity, their constitutional rights to be free from the excessive use of force and unreasonable searches and seizures, as well as their right to the equal protection of the laws under the Fourteenth Amendment, and (2) that the Village and Wysong are responsible for those violations due to the Villages' failure to adequately screen Officer Sanderson before hiring him and the subsequent failure to train, supervise, and discipline Officer Sanderson.

Defendants do not argue (nor can they) that Plaintiffs have failed to plead sufficient facts to allege that Sanderson violated their constitutional rights.  Assuming the facts alleged in the Amended Complaint are true, Sanderson's actions clearly violated each of the constitutional rights enumerated above.  The Defendants' only argument then is that Plaintiffs failed to allege sufficient facts to make plausible claims that the Village and Wysong are responsible for those constitutional violations under theories of inadequate screening, failure to train, supervise, and discipline, and violation of the Equal Protection Clause.  Accepting all of Plaintiffs" factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor,

the Court must find that the facts pled by Plaintiffs make it "at all plausible (beyond a wing and a prayer)" that they will succeed, and Defendants' Motion must be denied. *Doe v. Baum*, 903 F.3d at 581.

            1.      <u>Inadequate Screening Claims (Sixth and Twenty-First Claims for Relief)</u>

A municipality may be held liable for harm caused by the single decision of a policymaking officer in a matter within his authority. *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). A single hiring decision by a decisionmaker with authority to do so may constitute a "policy" of the municipality sufficient to trigger liability under § 1983, if that decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cty. Commrs. of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 1392, 137 L.Ed.2d 626 (1997). "Only where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* Moreover, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. *Id.* at 412 (emphasis in original).

            Plaintiffs have set forth sufficient facts to make a plausible claim that Wysong's decision to hire Sanderson after performing an inadequate screening of his prior employment and disciplinary record reflected a deliberate indifference to the risk that a violation of Plaintiffs' constitutional rights would follow that decision. A complete review of Sanderson's prior

employment and disciplinary history would have shown the lengthy list of his misconduct in a very brief and undistinguished law enforcement career.

In paragraphs 24, 25, and 26a – 26l of their Amended Complaint, Plaintiffs have alleged that Wysong, as the only full-time, paid peace officer in the Phillipsburg Police Department and the final decisionmaker with respect to hiring decisions at the Village police department, decided to hire Sanderson as a police officer despite his knowledge of the following:

a.   That Sanderson had been disciplined and suspended on multiple occasions while employed at the Montgomery County Juvenile Detention Center for, among other things, viewing pornographic web sites on one of his employer's computers while on duty, allowing a male to enter a unit housing juvenile female residents, and leaving his post on multiple occasions and leaving the detention center for extended periods of time;

b.   That, within two months of beginning his employment at Grandview Medical Center Police Department, Sanderson had taken a photograph of his erect penis next to a can of hairspray and exhibited that photograph to nursing staff around the hospital;

c.   That Grandview Medical Center had suspended Sanderson for an investigation of his violations of the hospital's conduct and discipline policy and its sexual harassment policy;

d.   That Sanderson had had several unauthorized contacts with a known prostitute while employed as a Grandview Medical Center police officer, during which the exchange of money for sex acts was discussed, and at least one contact during which Sanderson displayed his duty weapon and Grandview Police badge to the prostitute;

e.   That Sanderson had resigned his position at Grandview Medical Center Police Department less than three months after starting there and while the investigation into his sexual misconduct was still pending;

f.    That Sanderson's only prior employment as a peace officer was his two-month stint at Grandview Medical Center;

g.   That Sanderson had had little or no prior on-the-job training as a peace officer;

h.   That, due to the size and budget of the Phillipsburg Police Department, Sanderson would frequently be the only peace officer on duty during his shift and that he would therefore be working, during those times, without any supervision;

8

      i.      That Sanderson's shift would frequently be during the time of day after the Phillipsburg municipal building [was] closed, locked, and unstaffed for the day;

      j.      That the Village of Phillipsburg and Wysong would be providing Sanderson a key to the Phillipsburg municipal building, which would give him unsupervised and unfettered access to the Phillipsburg municipal building;

      k.      That the Village of Phillipsburg had no police cruisers equipped with cameras, no body cameras, and that there were no cameras placed in the Phillipsburg municipal building, such that any misconduct by a police officer was likely to go undetected;

      l.      That Sanderson lacked the knowledge, experience, and judgment to perform the duties of a peace officer, especially without direct supervision.

Am. Complaint, ¶¶ 24, 25, 26a-26l.

These facts, known to Wysong as a prior supervisor of Sanderson at G4S, a private security firm, should have led him as a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire Sanderson would be the deprivation of a third party's federally protected rights.  Sanderson's work history reflects not only immaturity and irresponsibility, as indicated by, among other things, his comment to his fellow police recruits if they were "making love" during a training exercise and his desertion of his duty post at the Juvenile Detention Center on multiple occasions for extended periods of time.  That work history also clearly indicated a predilection for gratifying, or attempting to gratify, his sexual desires during his hours of employment and while charged with a public responsibility:  (1) Sanderson accessed pornographic web sites from a government computer while employed at the Juvenile Detention Center, (2) he photographed his erect penis next to a can of hairspray and exhibited that photograph to female nursing staff members at Grandview Medical Center while on duty as a Grandview police officer within the first two months of his employment there, and (3) he made contact with a known prostitute while on duty as a Grandview police officer and talked about having the prostitute perform oral sex on him for twenty dollars, despite the absence

of any authority or training to conduct any kind of prostitution-related investigation or law enforcement.  Am. Complaint, ¶¶ 10, 14-18.

Perhaps most concerning, Sanderson's prior history indicated a willingness to exceed the bounds of his authority and to use his authority for his own purposes.  While employed at the Juvenile Detention Center, Sanderson left his duty post on multiple occasions for extended periods of time, including leaving the facility entirely.  *Id.*, ¶ 10.  At Grandview Medical Center Police Department, Sanderson expressed to his supervisors his interest in undercover prostitution work and admitted to them that, on several occasions, he had spoken to prostitutes before work, sat in front of drug houses, and spoken to people after they purchased drugs, despite the fact that Grandview Medical Center Police Department did not participate in undercover drug or prostitution operations, and Sanderson's actions were not done as part of any such operations.  *Id.*, ¶¶ 13-17.  Further, on one occasion when a prostitute got into Sanderson's vehicle, he displayed a black handgun and his Grandview Police badge to her.  *Id.*, ¶ 16. Importantly, Sanderson's misconduct at Grandview happened within the first two months of his employment there, his first and only job as a certified peace officer prior to his employment at the Village of Phillipsburg.  *Id.*, ¶¶ 13, 14, 18.

The combination of Sanderson's immaturity and irresponsibility, his predilection for gratifying, or attempting to gratify, his sexual desires while on the job, and his willingness on multiple occasions to exceed the bounds of his authority and to use his authority for his own purposes, clearly demonstrated an obvious risk that Sanderson would engage in the types of misconduct at issue here – violations of the Plaintiffs' constitutional rights to personal security and bodily integrity, their constitutional rights to be free from the excessive use of force and

unreasonable searches and seizures, as well as their right to the equal protection of the laws under the Fourteenth Amendment.

Wysong also knew that the obvious risk that Sanderson posed would be exacerbated by the conditions under which Wysong knew that Sanderson would be working at the Village. Wysong knew that Sanderson's only prior employment as a peace officer was his two-month stint at Grandview Medical Center; that Sanderson had had little or no prior on-the-job training as a peace officer; that Sanderson would frequently be the only peace officer on duty during his shift and that he would therefore be working without any supervision; that Sanderson's shift would frequently be after the Phillipsburg municipal building was closed, locked, and unstaffed for the day; that the Village would be providing Sanderson a key to the Phillipsburg municipal building, which would give him unsupervised and unfettered access to the Phillipsburg municipal building; that the Village had no police cruisers equipped with cameras, no body cameras, and that there were no cameras placed in the Phillipsburg municipal building, such that any misconduct by a police officer was likely to go undetected; and that Sanderson lacked the knowledge, experience, and judgment to perform the duties of a peace officer, especially without direct supervision. Am. Complaint, ¶¶ 26f-26l. The risk that Sanderson would continue to act on his predilection to satisfy his sexual desires and his propensity to exceed the scope of his authority as a peace officer was obvious, and Wysong was deliberately indifferent to the danger he created by hiring Sanderson and unleashing him on the unsuspecting women of Phillipsburg and the surrounding area.

Despite the obvious risk that Sanderson's hiring created, the question before the Court is not whether Plaintiffs have proved their case at this time, but rather whether it is "at all plausible (beyond a wing and a prayer)" that Plaintiffs would succeed, if they proved everything

in their Amended Complaint. *Doe v. Baum*, 903 F.3d at 581. Because adequate scrutiny of Sanderson's prior record would have led a reasonable policymaker to conclude that Sanderson was highly likely to inflict the particular injuries suffered by Plaintiffs (violations of their rights to bodily integrity, to be free from excessive use of force and unreasonable search and seizure), Plaintiffs have pled sufficient facts to state a claim against the Village and Wysong for inadequate screening.

        2.      <u>Failure to Train/Supervise/Discipline Claims (Seventh and Twenty-Second Claims for Relief)</u>

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). "To succeed on a failure-to-supervise theory, a plaintiff must prove that the City's flawed supervision was the 'moving force' behind the unconstitutional conduct, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that the City was deliberately indifferent to the 'known or obvious' constitutional violations that would result, *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)." *Pecsi v. City of Niles*, 674 Fed. Appx. 544, 547 (6th Cir. 2017). Defendants claim that "Plaintiffs fail to set forth facts that the Village was deliberately indifferent or that the Village's inadequate supervision was closely related to or actually caused her injuries." Motion to Dismiss (Doc. 19), PAGEID# 163. Contrary to the Defendants' assertion, Plaintiffs have alleged facts sufficient to show that its failure to supervise claim is plausible.

As demonstrated above, Plaintiffs have pled that Sanderson had inadequate prior training as a peace officer (having been dismissed from the Dayton Police Academy) and he was inexperienced as a law enforcement officer, having served only two months in his only prior law enforcement job at Grandview Medical Center, from which he resigned due to an ongoing investigation into his misconduct. Am. Complaint, ¶¶ 14-18. In addition, Plaintiffs have alleged that Wysong was the only full-time peace officer employed by the Village at the time of Sanderson's hire, that Wysong knew, due to the size and budget of the Phillipsburg Police Department, that Sanderson would frequently be working, without supervision, as the only peace officer on duty during his shift, that he would have a key to the unstaffed municipal building, and that Sanderson lacked the knowledge, experience, and judgment to perform the duties of a peace officer, especially without supervision. *Id.* at ¶¶ 24, 26h-l. Plaintiffs have also alleged that the Village sanctioned a policy of maintaining a Village police department, as opposed to contracting with the Montgomery County Sheriff's Office for police protection, despite the obvious lack of proper supervision, training, and discipline of the Police Department that was necessary to safeguard the constitutional rights of the people of Phillipsburg. *Id.* at ¶¶ 127a, 228a.

As a matter of policy, the Village chose to hire Sanderson, an inadequately trained, inexperienced officer, with a record replete with misconduct, and gave him a cruiser, a badge, a gun, a key to the municipal building, and free rein to operate however he wished, without supervision or fear of detection. Rather than place him under the supervision of a responsible, trained officer, the Village provided no supervision of Sanderson at all. While "opportunity alone, without reason to suspect that it will lead to a constitutional violation, does not establish deliberate indifference," *Mize v. Tedford*, 375 Fed. Appx. 497, 501 (6th Cir. 2010),

in this case the Village *had* reason to suspect that the golden opportunity it handed Sanderson would lead to constitutional violations due to its knowledge of his prior misconduct, inexperience, and inadequate training.  As a result, Plaintiffs have pled sufficient facts to proceed on their failure to supervise and train claims.

3.  Violation of Equal Protection Clause (Eighth and Twenty-Third Claims for Relief)

Plaintiffs have alleged sufficient facts to state plausible claims against the Village and Wysong for violation of the Equal Protection Clause.  "To establish an equal-protection violation, a plaintiff must allege that the state made a distinction which 'burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference.'" *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir.2018) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

Defendants claim that Plaintiffs' Equal Protection claims fail, because "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir. 1996) (internal quotation omitted).  Plaintiffs have alleged that the Village and Wysong "discriminated against [Plaintiffs] on the basis of [their] gender by failing to provide a reasonably safe and secure location where female detainees could be processed."  Def. Motion to Dismiss (Doc. 19) (PAGEID# 165) (quoting Am. Complaint, ¶¶ 133, 234).  Plaintiffs further alleged that (1) the Village municipal building was the only location provided for Phillipsburg police officers to process female detainees, (2) the municipal building was unstaffed and unmonitored after normal business hours, (3) there was frequently only one police officer on duty after normal business

14

hours, and (4) because all Village police officers were male, women are disproportionately the victims of sexual assault by police officers, and women, especially handcuffed women, are more vulnerable than men to sexual assault due to their relative size and strength, the policy disproportionately impacted female detainees by making them especially vulnerable to sexual assault and more likely to become victims of sexual assault. Am. Complaint, ¶¶ 135, 236.

Although the cases cited by Defendants state that the plaintiffs must allege purposeful or intentional gender discrimination to state an Equal Protection claim, the courts in these cases have denied motions to dismiss on those grounds. *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir.2018) (finding plaintiff sufficiently pleaded an equal protection claim on basis of facts showing circumstantial evidence of gender discrimination); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004) (reversing trial court's grant of judgment on the pleadings); *Doe v. Ohio State Univ.*, 323 F.Supp.3d 962, 971 (S.D. Ohio 2018) (noting that case was before it at motion-to-dismiss stage and reversing prior dismissal of equal protection claim). The facts alleged by Plaintiffs are sufficient to show that Defendants denied them treatment equal to that given to male detainees on the basis of their gender. Because Plaintiffs have alleged sufficient facts to plead a plausible Equal Protection claim, Defendants' motion to dismiss that claim should be denied.

<u>4.</u>    <u>Wysong is Not Entitled to Qualified Immunity in His Individual Capacity for Plaintiffs' § 1983 Claims.</u>

Plaintiffs have alleged sufficient facts to show that Wysong is not entitled to qualified immunity for the violations of Plaintiff's constitutional rights based on his failure to train, supervise, and discipline Sanderson. The defense of qualified immunity bars individual liability where "a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights." *Essex v. Cty. of Livingston*, 518 Fed.

15

Appx. 351, 356 (6th Cir. 2013) (internal quotation marks and citation omitted). However, qualified immunity is not available to individuals who are liable as supervisors. "A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (internal quotation marks and citation omitted). The Sixth Circuit has "interpreted this standard to mean that 'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir.2016) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) and *Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008)).

"[A] mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d at 241. There must be some "active unconstitutional behavior" by the supervisor. *Id.* "However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation." *Id.* at 242 (citing *Campbell*, 700 F.3d at 790). In *Campbell*, a police chief was not actively involved in incidents involving a K-9, but there was a causal connection between his acts and omissions and the alleged injuries. *Campbell*, 700 F.3d at 790 (holding that police chief's "apparent indifference to maintaining a properly functioning K-9 unit could be reasonably expected to give rise to just the sort of injuries that occurred").

Here, as in *Campbell*, the police chief may not have been actively involved in the incidents involving his officer, but his apparent indifference to maintaining a properly functioning officer could be reasonably expected to give rise to the constitutional injuries that did

occur. Wysong knew that Sanderson was inexperienced and had inadequate prior training. He knew that he had a history of prior misconduct, including on-duty sexual harassment of female nurses, inappropriate conduct with prostitutes, and viewing of pornographic web sites. He knew that he had repeatedly ignored his duties while at the Juvenile Detention Center and exceeded the scope of his authority and duties while at Grandview Medical Center. Despite those facts, Wysong failed to train him and then placed him on a night shift, a time when he would have no supervising police officer – indeed, no supervision at all – and complete, unfettered access to the Village municipal building. Not only was Sanderson not directly supervised, he was also not indirectly supervised through the use of a body camera, cruiser camera, or video surveillance at the municipal building. Under these facts, Plaintiffs have adequately stated facts that allege that Wysong at least implicitly authorized, approved, or knowingly acquiesced in Sanderson's unconstitutional behavior. Further, there is a causal connection between Wysong's actions and the harm suffered by Plaintiffs. Wysong's failure to train and supervise Sanderson reasonably could have been expected to give rise to the injuries suffered by Plaintiffs in this case. As a result, Wysong is responsible, under a supervisory liability theory, for the violations of Plaintiffs' constitutional rights, and he is therefore not entitled to qualified immunity.

C.    <u>Plaintiffs Have Sufficiently Pled Facts to State a Plausible State Law Claim Under R.C. 4112.02(G) (Fourteenth and Twenty-Fifth Claims for Relief).</u>

Plaintiffs have pled sufficient facts to state a plausible state law claim under R.C. 4112.02(G), which makes it an unlawful discriminatory practice "for *any* proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." R.C. 4112.02(G)

(emphasis added).  Defendants claim that Plaintiffs have failed to state facts that they were denied "full enjoyment" because they did not allege that they were denied access to the municipal building or that they were customers of the Village.  Motion to Dismiss (Doc. 19), PAGEID# 167-68.  Plaintiffs have adequately stated the reasons that they were denied the full enjoyment of the municipal building.  While others were able to enjoy the advantages, facilities, and privileges of the municipal building without undue fear and threat of sexual assault, Plaintiffs were denied the full enjoyment of those advantages.  They were denied those advantages by the Village and Wysong, because the Defendants failed to staff the municipal building during hours when a single police officer was on duty, thus creating a "ready-made environment in which a female detainee could be sexually assaulted by a Village police officer" in the municipal building.  Am. Complaint, ¶¶ 173, 249.

The Village and Wysong are also not entitled to statutory immunity under R.C. 2744.02(A)(1).  Here, while the Village is a political subdivision under the first tier of the analysis, and police staffing decisions are governmental functions, Defendants fail to recognize that an exception to immunity applies under the second tier of the analysis, specifically, R.C. 2744.02(B)(5).  That section provides an exception to political subdivision immunity when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code. Liability is expressly imposed in this case under section R.C. 4112.02(G) for discriminatory practices in public accommodations. *See Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, 17 N.E.3d 554, ¶ 12 (2014); *Davis v. Jackson Cty. Mun. Court*, 941 F.Supp.2d 870, 883 (S.D. Ohio 2013).

Wysong also claims that he is also entitled to statutory immunity in his individual capacity.  Again, however, there is an exception when liability is expressly imposed upon the

employee by another statute. R.C. 2744.03(A)(6)(c). Liability is expressed imposed on employees of places of public accommodations under R.C. 4112.02(G). Plaintiffs have pled sufficient facts to make a plausible claim that Plaintiffs were discriminated against in their use of the municipal building, a public accommodation, and the Defendants are not statutorily immune because there is a specific exception under the Ohio Revised Code that imposes liability on the Village and Wysong for this discrimination.

      D.    <u>Plaintiff Roger Brickles's Loss of Consortium Claim Should Not Be Dismissed (Fifteenth Claim for Relief).</u>

      Defendants argue that Roger Brickles cannot recover for loss of consortium if there is no cognizable claim under Ohio law available to the injured spouse. As Plaintiffs have shown above, however, Tina Brickles does have a cognizable state law claim under R.C. 4112.02(G). Therefore, Mr. Brickles can maintain his loss of consortium claim.

III.    <u>CONCLUSION</u>

      For the foregoing reasons, Defendants' Motion to Dismiss must be denied.

      Respectfully submitted,

      <u>/s/ Bradley D. Anderson</u>
      Bradley D. Anderson (0061325)
      Kevin M. Darnell (0095952)
      RION, RION & RION, L.P.A., INC.
      130 W. Second St., Suite 2150
      Dayton, OH 45402
      Phone: (937) 223-9133
      Fax: (937) 223-7540
      banderson@rionlaw.com
      kdarnell@rionlaw.com

      Attorneys for Plaintiffs Tina Brickles, Roger Brickles, and Kelsey Walker

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiffs' Memorandum in

Opposition to the Motion to Dismiss of Defendants Village of Phillipsburg, Ohio and Mark

Wysong was filed electronically on the 19th day of February, 2019, in accordance with the

Court's electronic filing guidelines.  Service on all parties of record will be made through the

Court's Electronic Filing System in accordance with Fed. R. Civ. P. 5(b)(2)(f).  The parties may

also access this filing through the Court's Electronic Filing System.

| | |
|---|---|
| James H. Gordon | Melvin J. Davis |
| Jeremy Kopp | Reminger Co., L.P.A. |
| Ansa Assuncao LLP | 200 Civic Center Drive, Suite 800 |
| Two Miranova Place, Suite 300 | Columbus, OH 43215 |
| Columbus, OH 43215 | mdavis@reminger.com |
| James.Gordon@ansalaw.com | |
| Jeremy.kopp@ansalaw.com | Attorney for Justin Sanderson |

Attorneys for Village of Phillipsburg
and Mark Wysong

/s/ Bradley D. Anderson
Bradley D. Anderson